**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
_____Central_____ **DIVISION**

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 1 2 2021

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

Anesha Dexter

_____

_____

(Name of plaintiff or plaintiffs)

v.

CIVIL ACTION NO. 4:21-cv-291-BSM
(case number to be supplied by the assignment clerk)

University of Central Arkansas
University of Central Arkansas
Music Department

This case assigned to District Judge Miller
and to Magistrate Judge Harris

(Name of defendant or defendants)

## COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for

employment discrimination.  Jurisdiction is specifically conferred on the Court by  42 U.S.C.

§2000e-5.   Equitable  and  other  relief  are  also  sought  under  42  U.S.C.  §2000e-5(g).

2.    Plaintiff, Anesha Dexter _____, is a
(name of plaintiff)

citizen of the United States and resides at 1623 Bruce St _____
(street address)

Conway _____, Faulkner _____, ARKANSAS, 72034-6424
(city)                (county)              (state)           (ZIP)

501-908-7370 .
(telephone)

3.    Defendant, University of Central Arkansas lives at, or its
(name of defendant)

business is located at 201 Donaghey Ave. Conway
(street address)                     (city)

Faulkner , ARKASAS , 72035 .
(county)          (state)          (ZIP)

4.    Plaintiff  sought  employment  from  the  defendant  or  was  employed  by  the

defendant at _201 Donaghey Ave_, _Conway_,
            (street address)                          (city)

_Faulkner_, _ARKANSAS_, _72035_.
 (county)          (state)         (ZIP)

5.     Defendant discriminated against plaintiff in the manner indicated in paragraphs 9 and 10 of the complaint on or about _January_ _31_ _2020_.
                                          (month)     (day)     (year)

6.     Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission charging defendant with the acts of discrimination indicated in paragraphs 9 and 10 of this complaint on or about _July_ _30_ _2020_.
                                          (month)     (day)     (year)

7.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue which was received by plaintiff on _December 27, 2020_, a copy of which notice
                                     (month)   (day)   (year)
is attached to this complaint.

8.     Because of plaintiff's (1) _X_ race, (2) _____ color, (3)_____ sex, (4) _____ religion, (5) _____ national origin, defendant:

     (a) _____ failed to employ plaintiff.

     (b) _____ terminated plaintiff's employment.

     (c) _____ failed to promote plaintiff.

     (d) _Retaliation e.) Disability_

9.     The circumstances under which the defendant discriminated against plaintiff were

as follows: _See attachment ( 7 pages )_____

_____

_____

_____

_____

_____

_____

_____

_____

10.    The acts set forth in paragraph 9 of this complaint:

    (a) __X__ are still being committed by defendant.

    (b) _____ are no longer being committed by defendant.

    (c) __X__ may still be being committed by defendant.

11.    Plaintiff attaches to this complaint a copy of the charges filed with the Equal

Employment Opportunity Commission which charges are submitted as a brief statement of the

facts supporting this complaint.

    WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

    (a) _____ Defendant be directed to employ plaintiff, and

    (b) _____ Defendant be directed to re-employ plaintiff, and

    (c) _____ Defendant be directed to promote plaintiff, and

    (d) X Defendant be directed to _pay for compensatory & punitive damages_

and that the Court grant such relief as may be appropriate, including injunctive orders, damages,

costs and attorney's fees.

_____
SIGNATURE OF PLAINTIFF

**ANESHA DEXTER**                                                 **PLAINTIFF**

**V.**                                    **CASE NUMBER**

**UNIVERSITY OF CENTRAL ARKANSAS**                    **DEFENDANT**

**April 9, 2021**


1.  **Origin of Claim and Claims made following**

My name is Anesha Dexter. I was hired in the Spring semester of 2019 as a Faculty Flute Instructor at University of Central Arkansas's Community School of Music(CSM). My complaint is that as an employee at UCA, I experienced Race and Employment Discrimination, Bullying, Racial Harassment, Unfair Treatment, Retaliation and ultimately, was fired by Dr. Stephen Plate after I complained to Ms. Bridget Fortenberry, Vice Associate at HR after an email I received an email from UCA Faculty, Community School of Music Coordinator and Director, Jaimee Jensen-McDaniel requesting that I explain the reason for what they said to be a discrepancy regarding the number of hours that I submitted for the Fall 2019 term, and would I provide any documentation to account for them.

So, I prepared and submitted the documents in the form of text messages between me and my student to CSM--but not before I consulted with HR on January 8, 2020 to verify what I assessed at home; and as expected, I found no discrepancies in the hours or days that I had worked and submitted, and as it turned out, nor did HR.  However, what HR did find is that CSM owes me for two hours' pay from October 2019 and while there I spoke to Ms. Fortenberry and she confirmed that I am owed for those hours, and that if I taught that they had to pay me but they could not pay me until CSM approved the hours.

The reason I did not find that I was owed is because I only needed to use my calendar and the text messages as a comparison to make sure the days were accounted for. The reason that HR discovered that I am owed is that they compared the text messages with my timesheets, and as a result found that the

two hours were missing on Oct 22 and Oct 24, 2019 from the second pay period--based on the text messages that confirm that my student attended those lessons.  Nevertheless, I have not been paid to date as I have continuously been lied to and given the runaround from the University of Central Arkansas seeing as I have filed with the Labor Board followed by the Claims Commission which is currently pending to go before the Bureau of Legislative Research due to UCA's denying to pay me with the interest of 19% as I was told by a Labor Board Investigator. Furthermore, UCA confirmed during the Labor Board investigation that they were still challenging the fact whether my student attended the lesson and therefore, the pay. They also brought up further accusations as they told the Labor Board Investigator that they were still in question about hours that I worked in December 2019--even after it was approved by Ms. Fortenberry, Vice Associate HR that there were no discrapancies on my part. This statement confirms that the email from CSM was ill-intended, and it also justifies why I felt concerned when I received it on January 6, 2020, because it did not make sense. What I could not make sense of is the fact that CSM felt the need to include both the Chair of Music and the Vice Associate of HR in the email. This made me feel as if I was being singled out because it was unnecessary to include them in the email seeing as this was the first time that I had been made aware of any descrapancies. Also, the email stated that Mr. Jansen-McDaniel had previously spoken to my student, who is Caucasion to ask about the amounts she paid for the semester and when they had their last lesson, which was December 30, but CSM fabricated and said that my student said around the beginning of December. This truth is proven in the text messages I had with my student on January 8, 2020 while all of this was transpiring.

   2.  Student's word over mine as an employee.

Following speaking with Ms. Fortenberry at the HR office, Ms. Fortenberry wrote back to us and said for CSM to get with me regarding the two hours that HR discovered. I offered to meet with CSM, but they replied back that since they had not heard from my student regarding them sending text messages, etc. if I would I go ahead and send any texts, etc.  that I had and that they would take it from there. Their email made me upset as CSM was again being dishonest as I was communicating with my student via text and was able to learn the truth of the matter.  This further upset me because I began to realize that something was not right and that I was being made out to look and treated as if I were guilty, especially as the Music Chair and Vice Associate of HR were included in the

email. Consequently, I called Ms. Fortenberry on or around January 9, 2020 to complain about what I felt to be discrimination regarding CSM's attitude and behavior towards me at the time, and also made mention of previous incidents that took place that I was in question about and felt this may have been the reason for CSM to initiate such an ordeal. It was during this conversation that Ms. Fortenberry suggested that I speak to Dr. Plate after I mentioned that I was going to speak to him at first but that I called her as she was familiar with a previous incident that I had with CSM in the Summer 2019 regarding non-payment for those terms. I also mentioned that I was uncomfortable talking about discrimination and that although I was complaining I had no intentions of filing a claim as it stressful, time consuming and exhausting, but that I need to talk about the situation at hand because I was feeling hopeless.

So, after speaking with Ms. Fortenberry I scheduled a meeting with Mr. Plate and met with him on January 16, 2020.

3.  Retaliation that led to Discrimination and Wrongful Termination

I met with Mr. Plate at his office to share my concerns as an employer.  It was during his introduction that he made discriminatory comments regarding race.

As a result of my conversation with Ms. Fortenberry regarding not feeling comfortable talking about Racism,  It was during this meeting that Mr. Plate made unnecessary and inappropriate comments regarding being an African-American Classical Musician and made reference to gang culture after asking me where I was from. He even went as far as to lie and tell me that he used to be in a gang called the Islanders. This was after he asked me where I was from but before I could tell him where I grew up, which is here in Arkansas. Also during our conversation, Mr. Plate told me that they were cracking down on keys and that if I didn't have any students I would have to turn them in. First of all I was assigned all keys by CSM and they were issued out by the UCA Physical Plant. So, I have no idea why he would ask me to turn my keys because they were cracking down on keys as if everyone can easily gain access to keys at UCA and that I had not right to have the keys I had been issued in my posession.

Mr. Plates motivated by his ill-intentioned attempt to get to know me and try to reassure he over compensated and manipulatively reassured me as a means of what hat I had a positive experience at the end of our meeting as he was aware of my conversation with Ms. Fortenberry and proudly let me know that he had already spoken with her and that he already knew everything. This was concerning and made me feel uncomfortable as I began to feel that I was about to be interrogated. Nevertheless, I went on to try and

explain my concerns regarding the current incident and previous incidents as I had already shared with Ms. Fortenberry regarding discrimination and CSM.

Earlier in our conversation in passing Mr. Plate mentioned that I would not be able to retain my job if I did not have a student. His comment did not make sense to me so near the end of our conversation I asked him to clarify what he said and asked him if that meant that if my student did not return that I would be unemployed and he said "Yes!" I asked him why that was and he told me that they already had enough flutes(the instrument that I play). I said oh really and that they must be new and he said that they were. I then asked him what did they have to do with me? I then asked who students would study with seeing as the other flute Faculty tended not to take on new students, especially beginner students. He then said that it's not like it says "Dr. Dexter"( signaling quotations with his hands when he said my name) and made it seem as  if the information regarding taking lessons only listed the instruments of study that were available. I then said that that did not make any sense and asked why would advertise something that you are not available and would you just find a teacher as needed and he said yes. Either way, this made no sense as that is not how it worked. Furthermore, when I was first hired in Fall of 2018 but I did not have a student until later after enrollment at the end of February 2019, therefore, I could not understand why I would no longer be able to be employed had my student not returned. Either way, this was not true as I ended up asking a student worker (non flutist) if they currently had any students and they told me no and that Mr. Jensen-McDaniel was supposed to be getting back to them about a prospective student sometime in February. So, again Mr. Plates reasons for having the CSM asking me to turn in my keys in an email on January 24, 2020 and him wrongfully terminating me had nothing to do with whether or not my student returned. Mr. Plate did not give me or my student a chance to return as I was asked to turn my keys in by January 31, 2020.

Seeing as I was upset and confused after the meeting with Mr. Plate, I decided to meet with Dr. Tom Williams, Dean of College of Liberal Arts on January 28, 2020 in order to gain clarity as to whether I still I had job as I felt confused and uncertain as to the events that had taken place and to express my concern regarding comments that were made by Mr. Plate. Dr. Williams told me that he would get in touch with CSM to verify my job status and to clarify as to whether my information had been removed from the roster as it had still been in place up until then, meaning on January 28, 2020. However, I decided to check while sitting in his office and that is when I saw that my information was no longer there. Prior to that day the last time that I had checked to see if in fact my information was on the CSM website was after the meeting with Mr. Plate on January 16 and it was still there.  As promised, I received a confirmation email on January 31, 2020

from Dr. Williams confirmed that I no longer had a job, that yes, my information had been taken down and that future students would study with whoever was listed at the time. Again, my employer was aware of my students plan of returning in February but they chose to fire me because I complained to Ms. Fortenberry.

4.  Conclusion

As an employee I experienced Retaliation and various forms of Racial Harassment, Bullying, Intimidation and Hostility from CSM staff, Mrs. Jensen-McDaniel and Mr. Jensen-McDaniel via email, phone and in person, as well as malicious interference with work performance as a result of false accusations beginning with the email served as the catalyst in being fired. Seeing as my claim with the Claims Commission is still pending, it is evident that I am still being subject to this unfair and unlawful treatment, which is essentially abusive, mentally, physically, and emotionally, and not to mention exhausting, and highly stressful which has resulted in high anxiety and depression that has affected my daily life and work productivity as a professional musician and as an entreprenuer.

Overall, I have experienced direct and indirect Racial and Employee Discrimination regarding firing, pay, job assignments, promotions, wrongful-termination, unfair employment practices, and unfair treatment as a result of what I believe to be my color, race, ethnicity, nation of origin, gender, age, and disability by Faculty by UCA Music Chair, Stephen Plate, Brdiget Fortenberry, UCA Vice Associate Human Resources, UCA Community School of Music's Staff, Fiscal and Outreach Coordinator, Ron Jensen-McDaniel, and Creative and Communications Coordinator ,Jaimee Jensen-McDaniel's, and Tom Williams, College of Fine Arts and Communications - Acting Dean seeing as no one choose to do the right thing, ethically as an employee, let along morally as a human being.

5.  Closing

My conversation with Mr. Plate led me to believe that I still had a job although he knew that he had already terminated me as is confirmed in my work history. It shows that I was terminated on January 15, 2020. I met with Mr. Plate on January 16, 2020. Therefore, ultimately, I was fire out of Retaliation as a result of my complaint to Ms. Fortenberry.

The way that I was and am currently being treated is unnecessary and uncalled for. At the time I had a lot of mixed emotions and felt really confused, embarrassed, humiliated, disrespected, and frustrated as a result of CSM's false

accusations, as it turns out, and as proven in the emails between CSM and the Labor Board.

The perpetuation of their behavior and treatment towards me is unethical, malicious, insidious, and traumatizing all of which is and has been overwhelmingly insurmountably stressful, to say the least, even as I write. What is unfair and unfortunate is that I am still continuing to be antagonized by UCA regarding the payment for the hours that HR found, Nevertheless, CSM chose and continues to deny me the money that I worked for and that I am owed.

Why would my employer not come to me as an employee first regarding any discrepanices. My student's word was considered over mine. CSM manipulated her words in order to create a false narrative that was intended to defame my character and cause me to lose my job, and potentially, jobs in the future, here and abroad--as is being made apperent at this point.

The level of emotional, mental, physical pain, stress and turmoil as a result of the events beginning on January 6, 2020 to the present day have consumed my life and has affected my well-being in my daily and professional life. Their actions continue to cause me high stress and anxiety which exasperates my ADHD all of which in turn has contributed to me meeting the deadlines. It is and has been too much! I have missed out on applying for job opportunities as it seems that when there is an opening I am having to deal with this matter which is absolutely exhausting. What has been most exhausting is that I have been scrutinized for no fault of my own. Everything that has taken place, especially from January 16, 2020 is nothing but sheer racism and discrimination seeing as I was already fired the day I met with Mr. Plate on January 16, 2020.


I do not want to keep repeating myself here. Please read my letter to the EEOC. I apologize in advance if anything is unclear but would be most grateful if I am allowed the opportunity to be heard as writing can be a bit of a challenge for me due to me having ADHD, and even more so, regarding the stress and anxiety I am having to fight. I am not ashamed about having ADHD as it is often misunderstood. Nevertheless, I have told the truth and have tried my best to be as clear as possible, but due to the level of emotional stress and anxiety while trying to write and recall all of the details I may have summed up matters in writing as a result of trying to be clear and succinct. However, I am aware that

some parts are redundant but this entire situation involves so much that I know that if I am heard you will see, hear, and know that what I am saying is the truth. In order for me to have kept this appeal letter short, I would appreciate it if you would read my letter to the EEOC. Even there I have given a disclaimer regarding writing as succinctly as I could and that I have ADHD, but nevertheless, I am telling the truth.

Lastly, although I am a little late submitting this, I attempted to do so last week but after realising that I had just missed the deadline in filing, I have not been well and it has taken everything in me to complete this claim. Nevertheless, I was told that it would be up to the Judge to decide as to the timeliness of the submission. If you knew the struggles that come with having ADHD, that coupled with all that I have briefly mentioned regarding the toll and the emotional, physical, and mental toll that this is and has taken on me personally and professionally are indescribable, to say the least. Therefore, I pray that I am given an opportunity to be heard and to be compensated greatly for what I have and am having to endure, now and in the future. Seeing as I am not an attorney, I am not sure how to negotiate compensation and would prefer to deal with that at a later date providing I am granted an opportunity to be heard fairly.

Sincerely,

Anesha Dexter, DMA

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Anesha R. Dexter<br>1623 Bruce Street<br>Conway, AR 72032 | From: **Little Rock Area Office**<br>**820 Louisiana**<br>**Suite 200**<br>**Little Rock, AR 72201** |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| **846-2020-20417** | **Johnny L. Glover,**<br>**Investigator** | | **(501) 324-6475** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☒  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐  The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

| | |
|---|---|
| *(signature)* | **12-21-2020** |
| **William A. Cash, Jr.,**<br>**Area Office Director** | *(Date Issued)* |

Enclosures(s)

cc:   **Graham Gillis**
**VP of HR & Risk Management**
**UNIVERSITY OF CENTRAL ARKANSAS**
**201 Donaghey Avenue**
**Conway, AR 72035**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **846-2020-20417** |
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Anesha R. Dexter** | **(501) 908-7370** | **1976** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1623 Bruce Street, Conway, AR 72032** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **UNIVERSITY OF CENTRAL ARKANSAS MUSIC DEPT.** | **500 or More** | **(501) 450-5000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **201 Donaghey Avenue,  Conway, AR 72035** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **01-06-2020**   Latest **01-31-2020**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**See attachment**

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

| Date | Charging Party Signature |
|---|---|
| | |

To the EEOC:

My name is Anesha Dexter. I was hired in the Spring semester of 2019 as a Faculty Flute Instructor at University of Central Arkansas's Community School of Music. My complaint is that as an employee at UCA, I experienced Race and Employment Discrimination, Bullying, Racial Harassment, Unfair Treatment, Retaliation and ultimately, was fired as a result of Jaimee Jensen-McDaniel, UCA Faculty, Community School of Music Coordinator and Director's email I received on January 6, 2020 requesting that I explain the reason for what was thought to be a discrepancy regarding the number of hours that I submitted for the Fall 2020 term, and would I provide any documentation, etc. Before submitting them to CSM I consulted with HR to verify what I assessed. It was Ms. Fortenberry at HR who gave a final confirmation that my records were accurate. She also told me that they found that CSM owed me for two hours from the second-pay period in October 2019, but that they could not pay me until CSM approved it. I submitted my proof via email, and CSM staff told me that they would take care of it from there. That was on January 8, 2020; unfortunately, I never heard back from them regarding the payment until I filed a claim with the Labor Board, and later with the Arkansas Claims Commissions. Unfortunately, UCA has brought new, further claims against me as they are now accusing me of challenging whether my student attended the lessons, and accusations regarding work in December 2019 stating that I might have been overpaid. after HR confirmed that I am owed. Furthermore, Mr. Plate knew that I was to be paid as he asked me if I had been paid before I left his office on January 16, 2020. Additionally, CSM  brought new accusations as I am being falsely accused of having broken a work contract. This is untrue as there was no contract regarding the matter.

I called Ms. Fortenberry on January 8, 2020 regarding my concerns as an employee at CSM. During our conversation I expressed how I felt Mrs. Jansen-McDaniel's behavior/attitude in the past was rude, disrespectful, condescending, and dismissive and that at that point I was exasperated and that I felt that I was being harassed and as if I had been singled out as if I were guilty. I told Ms. Fortenberry that at that point, I had had enough and that I felt disrespected and that I had been singled out by CSM as Mr.

Plate, Ms. Fortenberry were CC'd in the email without having tried to resolve the matter before doing so; furthermore, CSM gave precedence to my students word over mine as Mr. Jensen-McDaniel first inquired with them about their records instead of first contacting me as their employee as is evident in the email. As a result, I felt that I was being backed in a corner and felt that I was made to look like I was a criminal; my student's word was sought on two occasions and was given consideration over my own, even as the employee. I told Ms. Fortenberry that I felt their actions may have been a form of Retaliation stemming from similar incidents, from Summer 2019 term. I mentioned that although I was aware that I could have filed a lawsuit then but that I had chosen not to file a complaint as it is emotionally exhausting and incredibly stressful. I told her that although I could, I had no intentions of filing a discrimination lawsuit as it too is exhausting and stressful.

I told Ms. Fortenberry that as a result of the events that transpired from CSM's email I needed to vent to her as I was frustrated and had been physically and mentally affected as I was experiencing anxiety and had gotten a migraine; and that I was fine before then. I told her that I called her due to her familiarity with my past experiences with CSM staff that I preferred to speak to talk to her instead of Mr. Plate. Although I was reluctant to meet with Mr. Plate, Ms. Fortenberry encouraged me to do so and scheduled a meeting.

I met with Mr. Plate on January 16, 2020. Consequently, I was fired by Stephen Plate as a result of Retaliation after I complained to Ms. Fortenberry that I felt I was being treated unfairly, that I felt I had been singled out, disrespected, and that I was being harassed by the CSM staff based on the actions, discriminative behaviors and attitudes, and discriminative employee practices as a result of the email I received from Mrs. Jensen-McDaniel on behalf of the CSM. Since then, it has been made apparent that the email served as the catalyst that led to being fired. During the meeting with Mr. Plate, I found parts of the conversation to be irrelevant and unnecessary as I was there to discuss my employment. Nevertheless, Mr. Plate arrogantly let me know that he was the interim-chair and that he was the clean-up man but that he was interested in the job. Mr. Plate gave me a run-down of his accomplishments and said

that as a conductor he had only ever seen around eleven or twelve African-Americans during all of that time; I had no comment.

Mr. Plate asked where I was from. When I told him that I was from Compton, he said, "oh I used to be in a gang." I said oh, really,? He said, "yes, I grew up in New York, and was going down the wrong path at some point but that it wasn't for very long." I said, oh, which one? He replied with, 'the Islanders. Following, I told him that I grew
up in Arkansas; after the meeting I learned that that is a professional hockey team.

I told Ms. Fortenberry that I only wanted to vent and that I felt uncomfortable talking to Mr. Plate due to past experiences regarding discrimination. Because Mr. Plate was aware that I would be uncomfortable meeting with him so he let me know that he already It was at that time that he told me that he had not talked to Mr. Jensen-McDaniel yet, but that he had already spoken to Mrs. Jensen-McDaniel.  When I spoke about the matter regarding Mrs. Jensen-McDaniel, Mr. Plate was defensive and even used a personal matter to justify her behavior, yet I was fired for seeking support regarding the conditions and unfair treatment that I have had to endure.

During our conversation Mr. Plate alluded that they would not be able to retain me as an employee if I didn't have a student; and also told me how they were trying to crack down on keys. Later, I asked for clarification, that if my student did not return in February 2020 (month my student had planned to enroll for the Spring 2020 term) that I would be unemployed; he said "Yes." I asked Mr. Plate why that would be, and he told me that they already had about five or six flutes. I said oh really and that they must be new? He said, "they are."  I then asked what they had to do with me and that I had not seen their names on the roster.  I then asked how students would know who to study with?  He then stated that it's not like it says "Dr. Dexter" which was in reference to my name being on the Faculty Roster. At the time this was not true as it was in place when I checked after our meeting. Mr. Plate asked me if I already had another job, and I told him that I was working on a project and he said oh, good, well good luck. Lastly, Mr. Plate asked if I had already been paid, and I told him no.

Therefore, he was aware that I should have been paid for the two hours that I am now being denied payment, and now being falsely accused of alleging that I am owed, and that I have not provided proof to substantiate my claim.

Following our meeting, I received an email on January 24, 2020 from Mr. Jensen-McDaniel:

> "Last we spoke, there was talk of your student from last semester coming back to take lessons with the CSM.
>
> Since we haven't heard from her yet and you don't currently have any students, I have deactivated your card swipe access to Snow Fine Arts. As I was told by human resources, part-time employees, specifically those of the Community School, should not have access to the building if they do not have any students at present and cannot have access to the building after hours.  This is across the board for any instructor we have that is typed as part-time extra help. I will also need you to return your keys to the lock shop no later than January 31, 2020. They are keys 411112 & 411065."

This further proves that I was Fired on January 15, 2020, and substantiates my complaint. UCA used Unfair Employee Practices as that the context of the above policies did not relate to my job classification as a part-time employee; it is only applicable to a part-time adjunct instructor, whereby at the end of their one semester teaching assignment they would have to turn in their keys upon completion of their job – at the end of the semester. Furthermore, I was hired on a one year contract, therefore, it would not have been a problem for me to keep my keys, seeing as the CMS's year round open enrollment and that my contract was still valid until June or July 2020.

I was confused after meeting with Mr. Plate, therefore, on January 28, 2020, I met with Mr. Tom Williams, Dean of University of Central Arkansas College of Fine Arts and Communications regarding my status as an employee, and my experience with Stephen Plate mainly about the racially discriminative undertone of our conversation and Mr. Plates comments and

attitude described in my statement of complaint regarding Mr. Plate. I also asked Mr. Williams for clarification as to whether I had been fired and explained to him that some of Mr. Plate's comments alluded that I could potentially be fired. I also told Mr. Williams about the discriminating comments that Mr. Plate made in that they were unnecessary(all described above). I told Mr. Williams that Mr. Plate insinuated that my name was not up and that my Bio and Photo had been removed from the CMS website - Mr. Williams asked if my Faculty info had taken down and I told him that it was there on Jan 16 after the meeting with Mr. Plate, but that I would check while there. This is when I discovered that my Bio and Photo were no longer on the CSM Faculty Roster. Mr. Williams said that he would get in touch with CSM about my inquiry for confirmation as to whether or not I was still employed,  if I needed to return my keys and whether my name having been removed from the CSM roster, after which he would follow-up with an email which I received on Jan 31, 2020 stating that he knew that this was that I probably did not want to hear, confirming that: I had been fired, that I had been removed from the CSM Website; that students would study with whomever was listed, and that I did need to turn in my keys.

Mr. Plate's actions, behavior, and comments were disrespectful, irrelevant, unnecessary, and offensive. Mr. Plate made assumptions based on my race, color, nation of origin, ethnicity, and gender. Ultimately, Mr. Plate's intentions were deliberate and included: Intentional Harassment, Bullying, Intimidating and Hostile behavior; Unfair Employee Practices, Racial and Employee Discrimination and it is and has been very stressful. Furthermore, Mr. Plate's decision to fire me is a result of Retaliation as when I met with him he let me know that he already knew everything and began to share key words from my conversation with Ms. Fortenberry as if to build my trust. It was at this point that I felt I was being interrogated, that and the fact that he was taking notes and when he later became hostile. As it turns out, I had unknowingly been fired the day before.

Overall, I have experienced direct and indirect Racial and Employee Discrimination regarding firing, pay, job assignments, promotions, wrongful-termination, unfair employment practices, and unfair treatment as a result of my color, race, ethnicity, nation of origin, gender, age, and disability by Faculty at the University of Central Arkansas. As an employee

I experienced Retaliation and various forms of Racial Harassment, Bullying, Intimidation and Hostility from CSM staff, Mrs. Jensen-McDaniel and Mr. Jensen-McDaniel via email, phone and in person, as well as malicious interference with work performance as a result of false accusation; ultimately, the email served as the catalyst in being fired.

I spoke to Ms. Fortenberry on January 8, 2020 regarding my  concerns as an employee at CSM. During our conversation I expressed how I felt Mrs. Jansen-McDaniel's behavior/attitude in the past was rude, disrespectful, condescending, and dismissive and that at that point I was exasperated and that I felt that I was being harassed and as if I had been singled out as if I were guilty. I told Ms. Fortenberry that at that point, I had had enough and that I felt disrespected and that I had been singled out by CSM as Mr. Plate, Ms. Fortenberry were CC'd in the email without having tried to resolve the matter before doing so; furthermore, CSM gave precedence to my students word over mine as Mr. Jensen-McDaniel first inquired with them about their records instead of first contacting me as their employee as is evident in the email. As a result, I felt that I was being backed in a corner and felt that I was made to look like I was a criminal; my student's word was sought on two occasions and was given consideration over my own, even as the employee.

As an employee at UCA I experienced Race and Employment Discrimination, Bullying, Racial Harassment, Unfair Treatment, Retaliation and ultimately, was fired as a result of Jaimee Jensen-McDaniel, UCA Community School of Music Coordinator and Director's email I received on January 6, 2020. Consequently, I was fired by Stephen Plate on January 31, 2020; out of Retaliation after I complained to Ms. Fortenberry at HR. As it turns out, I was fired on January 15, 2020, the day before meeting with Mr. Plate; therefore, I was indeed, Wrongfully-Terminated. Throughout the process, even to date, I have experienced direct and indirect Racial and Employee Discrimination regarding firing, pay, job assignments, promotions, wrongful-termination, unfair employment practices, and unfair treatment as a result of my color, race, ethnicity, nation of origin, age, and disability by Faculty by UCA Music Chair, Stephen Plate, Brdiget Fortenberry, UCA Vice Associate Human Resources, UCA Community School of Music's Staff, Fiscal and Outreach Coordinator, Ron

Jensen-McDaniel, and Creative and Communications Coordinator, Jaimee Jensen-McDaniel's, Tom Williams, College of Fine Arts and Communications - Acting Dean.

Ultimately, I was fired by Stephen Plate because of my race, Black, after I complained to HR regarding racial discrimination and discriminatory employee practices I felt that I was experiencing with CSM Faculty. This, including all of the events that led to me being fired, Mr. Plate's, Ms. Fortenberry's, Mr. William's, Mr. Jensen-McDaniel, and Mrs. Jensen-McDaniel's discriminatory actions and behavior towards me as a person and as an employee, the events that I have experienced, directly or indirectly related, are all in violation of the Title VII of the Civil Rights Act of 1964, as amended.

Sincerely,

Anesha Dexter

12:57



**KG**

Katie >

Jan 8, 2020, 3:20 PM

Hi Katie! Happy New Year!! I have a quick question.. haas the CMI been in touch with you regarding the amount of lessons that you took in fall? Please answer ASAP, it is urgent. Thank you!!

As of now, I only need yes, or no, please and thank you. 😊

Yes

Ok. Did you tell Ron "you met four times a month and were done with lessons around the beginning of December?"

4 times a month and finished at the end of December

Ok.

Did you mention the extra lessons that you took due to rescheduling based on our agreements?

Or due to you wanting extra lessons? Ie. October for the Wedding, and throughout December?

12:57

**KG**

Katie >

Or due to you wanting extra lessons? Ie. October for the Wedding, and throughout December?

Also, did you speak to Ron via phone or email?

Phone. And he called me during the middle of the day while I was sleeping. So I was pretty out of it/ groggy when I took the call. I probably did not make it very clear

Ok, no problem. However, do you remember what he asked you initially?

He asked how many lessons I paid for I think. And I told him that I initially paid for 4 lessons per month for the fall semester.

Anything else you remember about your conversation with Ron? Just to trying to gain a bit of clarity.

Also, when you say that you paid for 4 lesson per month for the fall, did you pay monthly, all at enrollment, etc?

12:57

< 35

KG

Katie >

etc?

That's pretty much what I told him. I paid it all at enrollment.

Ok, great! Thank you and sorry to bother.

Are you still planning on enrolling in the spring? 😛

Yes I'm just not sure I can do it in January because of my work schedule

Oh ok. No pressure, but would it help if you had lessons online in Jan?

I don't think I have the time this month to give it the practice time it deserves

I understand.

Well, I sure hope that you will pick back up!

I'm planning to in February!

By the way, Ron says that he is

12:58





Katie >

By the way, Ron says that he is waiting for a correspondence from you about the extra lessons..

Either way, have a great month, hang in there! I look forward to hearing from you! 😊

I don't think he has emailed me. But I'll double check.

Please do. Can you check now? Thank you!

No email from him since September 2019

That's all I needed to now. Thanks dear. 🙏

**UNIVERSITY OF CENTRAL ARKANSAS**
**PERSONNEL ACTION FORM**

Benefits Eligible
Appointment ✓
Change in Status
Termination

Supervisor
Regular
Extra Help ✓
Emergency Hire

| NAME Last | First | M.I. | UCA Email Address | UCA ID |
|---|---|---|---|---|
| Dexter | Anesha | | adexter1@uca.edu | B01019134 |

**A1. FUTURE/NEW STATUS** | **B1. CURRENT STATUS**

1. College/Division: Fine Arts and Communication

2. Primary Dept. Name: Music-Community School of Music

3. Title of Position: CSM Instructor

4. Employment Status

| | Grade | Full-time | Overload | Part-time | Grade | Full-time | Part-time |
|---|---|---|---|---|---|---|---|

5. Salary: $ 37.00/hr   12 mo. ___  10 mo. ___  9 mo. ___  Other ✓

6. Academic Term Designation: 1 (Spring) ✓  3 (Summer I) ___  5 (Other) ___  2 (Fall) ✓  4 (Summer II) ✓

**A2. FUTURE/NEW SALARY DISTRIBUTION**

| 7. Position Number (Leave Blank) | 8. Salaries Account Number and Name | | 9. % | 10. Effective Dates | | 11. Amount to be Paid (Payroll Use Only) |
|---|---|---|---|---|---|---|
| | Account Number | Account Name | | From | To | |
| 9990693 | 338000-620445  660100 | Comm. Sch of Music | | 07/22/2019 | 06/30/2020 | |

**B2. CURRENT SALARY DISTRIBUTION**

| 7. Position Number (Leave Blank) | 8. Salaries Account Number and Name | | 9. % | 10. Effective Dates | | 11. Amount to be Paid (Payroll Use Only) |
|---|---|---|---|---|---|---|
| | Account Number | Account Name | | From | To | |

**C. EXPLANATION**

1. Reason for the Appointment, Change, or Termination: Flute Instructor for Community School of Music. Pay based on enrollment
Department Contact: Ronald W McDaniel II rmcdaniel3@uca.edu 501-450-3672

2. Person being replaced: NA   3. Tenure Track Position? ___ Yes ✓ No  4. Is this a UCA Retirement? ___ Yes ✓ No

5. For termination, show the last day the employee was or will be present for work: NA

**SIGNATURES**

Principal Investigator (Grants) _____ Date
Hiring Unit/Department Chair _____ Date
Dean of College _____ Date
Vice President _____ Date
Human Resources _____ Date
Budget Office _____ Date
President _____ Date

HUMAN RESOURCES OFFICE ONLY
Job Code: ___  Title Code: ___  Schedule: ___
Concurrent Approved: ___  Date: ___

PAYROLL OFFICE ONLY
☐ Non-Exempt
Entered by: ___  Date: ___

Please Submit This Form in Yellow

HR (01/19)

9/24/2020

*Summer 2019*
*I + II Hours*
*Payed in Fall 2019*

# Summary of Reported Time

Set your printer layout to Landscape before printing.

Anesha Dexter
Extra Help - Hourly, 999093-00

Community School of Music, 338000

### Time Sheet

| Earning Code | Shift | Total Hours | Total Units | Monday, Jul 22, 2019 | Tuesday, Jul 23, 2019 | Wednesday, Jul 24, 2019 | Thursday, Jul 25, 2019 | Friday, Jul 26, 2019 | Saturday, Jul 27, 2019 | Sunday, Jul 28, 2019 | Monday, Jul 29, 2019 | Tuesday, Jul 30, 2019 | Wednesday, Jul 31, 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Extra-Help Hourly | 1 | 6 | | 1 | 1 | 1 | 1 | 2 | | | | | |
| **Total Hours:** | | 6 | | 1 | 1 | 1 | 1 | 2 | | | | | |
| **Total Units:** | | | 0 | | | | | | | | | | |

### Time In and Out, Extra-Help Hourly

| Monday Jul 22, 2019 | Tuesday Jul 23, 2019 | Wednesday Jul 24, 2019 | Thursday Jul 25, 2019 | Friday Jul 26, 2019 | Saturday Jul 27, 2019 | Sunday Jul 28, 2019 | Monday Jul 29, 2019 | Tuesday Jul 30, 2019 | Wednesday Jul 31, 2019 |
|---|---|---|---|---|---|---|---|---|---|
| 05:00 PM 06:00 PM | 05:00 PM 06:00 PM | 05:00 PM 06:00 PM | 05:00 PM 06:00 PM | 09:00 AM 10:00 AM 05:00 PM 06:00 PM | | | | | |

[ Previous Menu ]

**RELEASE: 8.12.1.5**

© 2020 Ellucian Company L.P. and its affiliates.



1/1

On Friday, January 24, 2020, 2:11 PM, Ronald McDaniel <rmcdaniel3@uca.edu> wrote:

Anesha,

Last we spoke, there was talk of your student from last semester coming back to take lessons with the CSM.
Since we haven't heard from her yet and you don't currently have any students, I have deactivated your card swipe access to Snow Fine Arts.

As I was told by human resources, part-time employees, specifically those of the Community School, should not have access to the building if they do not have any students at present and cannot have access to the building after hours.  This is across the board for any instructor we have that is typed as part-time extra help.

I will also need you to return your keys to the lock shop no later than January 31, 2020.
They are keys 411112 & 411065.



Ronald Jensen-McDaniel | Fiscal & Outreach Coordinator
University of Central Arkansas | Community Music Institute
Snow Fine Arts 203 | 201 Donaghey Avenue | Conway, AR 72035
501-450-3672 | 501-513-7149 mobile | rmcdaniel3@uca.edu

AVID: UCA dedicates itself to Academic Vitality, Integrity, and Diversity

Tom Williams, Ph.D
Dean, College of Liberal Arts
Acting Dean, College of Fine Arts and Communication
University of Central Arkansas
201 Donaghey Avenue
Conway, AR 72035
Twitter: @UCACLADEAN
Preferred Pronouns: he, him, his


AVID: University of Central Arkansas dedicates itself to Academic Vitality, Integrity, and Diversity


On Tue, Jan 28, 2020 at 6:05 PM <flutistaneshadexter@yahoo.com> wrote:

Dr. Williams,

It's all so overwhelming. Sorry that I forgot to forward that one as well.

Also, I do not recall saying that I felt attacked. I only pointed out the part where Ron stated what he was told by HR about part-time employees, "specifically" those of CSM. I said that it was the use of specification for part-time CSM employees that caught my attention and that it felt as if we were being singled out, or more specifically that I was being singled out and that this is a way of having me to return my keys because as according to Dr. Plate, I would be unemployed if my student did not enroll in February if she decided to return as she planned. This was not the only indication according to Dr. Plate's words that I was going to be let go. Either way, as it turns out, I now have to return my keys, and as we saw and read in your office, I have been removed from the CSM Faculty/Staff Roster/Directory. I also remember you telling me that my part-time position is not one that has anything to do with the employee termination that applies to other part-time employees that are hired on an as need basis. So, since the CSM follows the University's enrollment terms, I have worked continuously throughout my employment (fall,spring, and summer terms).

Best,

Anesha Dexter, D.M.A.
Freelance Flutist - Teacher - Performer of Modern and Baroque flutes - Coach for musicians. Anesha Dexter Classical Flutist




# Anesha Dexter Classical Flutist

_____

## Re: Fw: Key return for the Community School of Music

From:  **Anesha Dexter** (flutistaneshadexter@yahoo.com)

To:    twilliams73@uca.edu

Date:  Friday, January 31, 2020, 01:01 PM CST


Dr. Williams:

This is most definitely not the news that I wanted to hear. However, thank you for your time and attention to this matter.

**Best**
**Anesha Dexter, D.M.A.**
Freelance Flutist -  Teacher - Performer of Modern and Baroque flutes - Coach for musicians.  Anesha Dexter Classical Flutist


**Anesha Dexter Classical Flutist**

---

On Friday, January 31, 2020, 9:11 AM, Tom Williams <twilliams73@uca.edu> wrote:

Dr. Dexter:
Forgive me for the time that's elapsed since our last email. I have been in communication with staff at the Community Music School and learned the following:

1. That your student, Ms. Guess, has not enrolled for lessons.
2. That your photo has been removed from the CMS website because, without a student, you are no longer a member of the CMS faculty. The Faculty Handbook states: " Employment terminates automatically at the end of the semester but may be renewed depending on the instructional needs of the department" (16).
3. That future flute students will select from the current instructors on the website.

As a part-time faculty member, according to the Faculty Handbook, you were categorized as  "Non-continuing (cf. Chapter 3, Section IV.C.)." Such faculty  "do not have the expectation of renewal" (34).

I know this is not news you wanted to hear. I wish you well in all your endeavors.

Best,

Job Detail

# Job Detail

**Changes to Your Job**

| Effective Date | Personnel Date | Status | Salary Table | Grade | Step | Shift | Job Salary or Job Hourly Rate | Job Title | Department Name | Reason for Change |
|---|---|---|---|---|---|---|---|---|---|---|
| Jan 15, 2020 | Jan 15, 2020 | Terminated | XH | 02 | 0 | 1 | 37.00 | Extra Help – Hourly | Community School of Music | End of Job |
| Jul 22, 2019 | Jun 01, 2019 | Active | XH | 02 | 0 | 1 | 37.00 | Extra Help – Hourly | Community School of Music | Re-Hire |
| May 31, 2019 | May 31, 2019 | Terminated | XH | 02 | 0 | 1 | 37.00 | Extra Help – Hourly | Community School of Music | End of Job |
| Dec 16, 2018 | Dec 16, 2018 | Active | XH | 02 | 0 | 1 | 37.00 | Extra Help – Hourly | Community School of Music | New Hire |

**RELEASE: 8.12.1.5**

© 2020 Ellucian Company L.P. and its affiliates.

I continued teaching from
May 31 until Dec 30 2019
I was re-issued my Keys for
the Summer Terms (all) + for
the duration of my contract
which would have ended
June 30, 2020.
Above it proves I was active and continued
from June 1, 2020. However, it
shows that it went into effect
on July 22, 2020 as that is
when CSM finally submitted
the personal personnel action form, afterwhich
was then able to finally
...to submit my Fbsdery,

## Re: Meeting

From: flutistaneshadexter@yahoo.com

To:     splate@uca.edu

Cc:     kortneek@uca.edu

Date:  Sunday, January 12, 2020, 11:32 AM CST

Stephen - Sounds good!

Kourtnee: I will contact you tomorrow.

Best wishes

Anesha Dexter, D.M.A.
Freelance Flutist -  Teacher - Performer of Modern and Baroque flutes - Coach for musicians.  Anesha Dexter
Classical Flutist

*We Scheduled to meet on January 16, 2020 at 11am.*

**Anesha Dexter Classical Flutist**

On Saturday, January 11, 2020, 8:51 AM, Stephen W. Plate <splate@uca.edu> wrote:

Anesha:

As I mentioned, I'm happy to meet with you and from what you say in your email, I think it important that we meet.

I look forward to meeting you in person.

Stephen

Warmest regards

Stephen


Stephen W. Plate, DMA
Interim Chair
Music Department
College of Fine Arts and Communications
splate@UCA.edu
501 450 5752 - O
423 310 0173 - C

AVID: UCA dedicates itself to Academic Vitality, Integrity, and Diversity.


On Thu, Jan 9, 2020 at 1:39 PM <flutistaneshadexter@yahoo.com> wrote:

Dear Dr. Plate,

I hope this message finds you well.
If possible, I would like to schedule a meeting to speak to you regarding my concerns that I have as
an employee of the CMI. I look forward to hearing from you.

Kind Regards,

Anesha Dexter, D.M.A.
Freelance Flutist -  Teacher - Performer of Modern and Baroque flutes - Coach for musicians.
 Anesha Dexter Classical Flutist




**Anesha Dexter Classical Flutist**

Stephen W. Plate, DMA
Interim Chair
Department of Music
College of Fine Arts and Communication
University of Central Arkansas
501 450 5752 O
423 310 0173 C
http://www.uca.edu/music

On Fri, Jan 10, 2020, 10:37 PM <flutistaneshadexter@yahoo.com> wrote:

Stephen:

Good Evening!

Yes, all is resolved. However, that was not what I wanted to discuss exclusively as I mentioned that I wanted to discuss my concerns as an employee of the CIM. As of now, I will put off on scheduling a meeting with you and will follow-up in the future if I change my mind. Thank you for your reply.

Best,
Anesha Dexter, D.M.A.
Freelance Flutist - Teacher - Performer of Modern and Baroque flutes - Coach for musicians.  Anesha Dexter Classical Flutist

**Anesha Dexter Classical Flutist**

On Friday, January 10, 2020, 8:11 PM, Stephen W. Plate <splate@uca.edu> wrote:

Anesha:

Good morning!

I'm happy to meet with you at your convenience.  I believe that your issues have been resolved at this point, but if you'd still like to meet I am happy to do so.

Kortnee keeps my calendar and she has been CC'd on this email.  She will schedule something for you.

*asked to turn in keys     from CSM     after a meeting with Mr Plate on Jan 16, 2020*

On Friday, January 24, 2020, 2:11 PM, Ronald McDaniel <rmcdaniel3@uca.edu> wrote:

Anesha,

Last we spoke, there was talk of your student from last semester coming back to take lessons with the CSM.
Since we haven't heard from her yet and you don't currently have any students, I have deactivated your card swipe access to Snow Fine Arts.

As I was told by human resources, part-time employees, specifically those of the Community School, should not have access to the building if they do not have any students at present and cannot have access to the building after hours.  This is across the board for any instructor we have that is typed as part-time extra help.

I will also need you to return your keys to the lock shop no later than January 31, 2020.
They are keys 411112 & 411065.



Ronald Jensen-McDaniel | Fiscal & Outreach Coordinator
University of Central Arkansas | Community Music Institute
Snow Fine Arts 203 | 201 Donaghey Avenue | Conway, AR 72035
501-450-3672 | 501-513-7149 mobile | rmcdaniel3@uca.edu

AVID: UCA dedicates itself to Academic Vitality, Integrity, and Diversity

Tom Williams, Ph.D
Dean, College of Liberal Arts
Acting Dean, College of Fine Arts and Communication
University of Central Arkansas
201 Donaghey Avenue
Conway, AR 72035
Twitter: @UCACLADEAN
Preferred Pronouns: he, him, his


AVID: University of Central Arkansas dedicates itself to Academic Vitality, Integrity, and Diversity


On Tue, Jan 28, 2020 at 6:05 PM <flutistaneshadexter@yahoo.com> wrote:

Dr. Williams,

It's all so overwhelming. Sorry that I forgot to forward that one as well.

Also, I do not recall saying that I felt attacked. I only pointed out the part where Ron stated what he was told by HR about part-time employees, "specifically" those of CSM. I said that it was the use of specification for part-time CSM employees that caught my attention and that it felt as if we were being singled out, or more specifically that I was being singled out and that this is a way of having me to return my keys because as according to Dr. Plate, I would be unemployed if my student did not enroll in February if she decided to return as she planned. This was not the only indication according to Dr. Plate's words that I was going to be let go. Either way, as it turns out, I now have to return my keys, and as we saw and read in your office, I have been removed from the CSM Faculty/Staff Roster/Directory. I also remember you telling me that my part-time position is not one that has anything to do with the employee termination that applies to other part-time employees that are hired on an as need basis. So, since the CSM follows the University's enrollment terms, I have worked continuously throughout my employment (fall,spring, and summer terms).

Best,

Anesha Dexter, D.M.A.
Freelance Flutist - Teacher - Performer of Modern and Baroque flutes - Coach for musicians. Anesha Dexter Classical Flutist

# Anesha Dexter Classical Flutist

*asked*
*to turn in Keys*     *from CSM*
*after meeting*
*with Mr Plate*
*on Jan 16, 2020*

On Friday, January 24, 2020, 2:11 PM, Ronald McDaniel <rmcdaniel3@uca.edu> wrote:

Anesha,

Last we spoke, there was talk of your student from last semester coming back to take lessons with the CSM.
Since we haven't heard from her yet and you don't currently have any students, I have deactivated your card swipe access to Snow Fine Arts.

As I was told by human resources, part-time employees, specifically those of the Community School, should not have access to the building if they do not have any students at present and cannot have access to the building after hours.  This is across the board for any instructor we have that is typed as part-time extra help.

I will also need you to return your keys to the lock shop no later than January 31, 2020.
They are keys 411112 & 411065.



Ronald Jensen-McDaniel | Fiscal & Outreach Coordinator
University of Central Arkansas | Community Music Institute
Snow Fine Arts 203 | 201 Donaghey Avenue | Conway, AR 72035
501-450-3672 | 501-513-7149 mobile | rmcdaniel3@uca.edu

AVID: UCA dedicates itself to Academic Vitality, Integrity, and Diversity

## Re: Fw: Key return for the Community School of Music

**From:** Anesha Dexter (flutistaneshadexter@yahoo.com)

**To:** twilliams73@uca.edu

**Date:** Friday, January 31, 2020, 01:01 PM CST

Dr. Williams:

This is most definitely not the news that I wanted to hear. However, thank you for your time and attention to this matter.

Best
Anesha Dexter, D.M.A.
Freelance Flutist - Teacher - Performer of Modern and Baroque flutes - Coach for musicians.  Anesha Dexter Classical Flutist

**Anesha Dexter Classical Flutist**

_We met on Jan 28, 2020_

On Friday, January 31, 2020, 9:11 AM, Tom Williams <twilliams73@uca.edu> wrote:

Dr. Dexter:
Forgive me for the time that's elapsed since our last email. I have been in communication with staff at the Community Music School and learned the following:

1. That your student, Ms. Guess, has not enrolled for lessons.
2. That your photo has been removed from the CMS website because, without a student, you are no longer a member of the CMS faculty. The Faculty Handbook states: " Employment terminates automatically at the end of the semester but may be renewed depending on the instructional needs of the department" (16).
3. That future flute students will select from the current instructors on the website.

As a part-time faculty member, according to the Faculty Handbook, you were categorized as "Non-continuing (cf. Chapter 3, Section IV.C.)." Such faculty "do not have the expectation of renewal" (34).

I know this is not news you wanted to hear. I wish you well in all your endeavors.  _This rule is applicable to part-time faculty adjunct professors, not part-time in CSM._

Best,

12:58

**KG**

Katie >

Jan 16, 2020, 3:07 PM

Hi Katie. They are apparently going to implement a new rule at the CMI that permits me to be employed if I don't have any students??

If you are indeed planning on enrolling in February, would you be so kind to go ahead and enroll. I've told that them that you intend to enroll in Feb so they are aware. After a conversation with the Interim Chair today, it is clear that I will no longer have a job?

I hope not, but I've you have changed your mind, do let me know. Either way, you can still study with me - outside of the CMI.

Lessons online are always an option.

Typo:

Hi Katie. They are apparently going to implement a new rule at the CMI that say I will not be able keep employment if I don't have any students??

Typo:

12:58

< 35

**KG**

Katie

Typo:

Hi Katie. They are apparently going to implement a new rule at the CMI that says I will not be able to keep employment if I don't have any students??

Sheesh

Jan 17, 2020, 8:34 AM

Sorry for the late reply to all of this but yes, I will do this later today.

Jan 17, 2020, 9:42 AM

No problem. Thank you so much. Also, If you don't mind, please let me know when you've registered.

Jan 24, 2020, 2:15 PM

Hi Katie. Hope you are well. Just following up one last time about lesson enrollment. If you are still planning to enroll, you will need to do so today please so that the CMI will know that you are returning. Otherwise, they are requesting my keys..

If so, they will probably close around

1:02

 

KG

Katie >

Jan 24, 2020, 2:15 PM

Hi Katie. Hope you are well. Just following up one last time about lesson enrollment. If you are still planning to enroll, you will need to do so today please so that the CMI will know that you are returning. Otherwise, they are requesting my keys..

If so, they will probably close around 3 or 4? If you can't do it by then but still want to enroll, please let me know so that we can inform the CMI. Thank you!

Jan 24, 2020, 6:22 PM

Oh I just woke up! I still want to enroll!

 Gmail

---

## Wage Claim 2020-0392

---

**Samantha Martinez (ADL)** <Samantha.Martinez@arkansas.gov>       Fri, May 22, 2020 at 10:33 AM
To: "aneshadexter@gmail.com" <aneshadexter@gmail.com>

Ms. Dexter,

      I spoke with you last week in reference to the claim you had filed. I have not received your supporting documentation as of yet. I did receive a response from the employer showing the discrepancy that you were shorted 4 hours in October 2019. The employer found the mistake and paid you in November of 2019 according to the evidence they have provided. Please review the attached documentation and let me know if you received the direct deposit.

*Respectfully,*

*Samantha L. Martinez*
*Arkansas Department of Labor & Licensing*
*Labor Standards Investigator*
**Direct : (501) 690-9561**
**Office : (501) 682-4500**
Email : Samantha.Martinez@Arkansas.gov
**Hours : Mon-Fri 8:00 AM – 4:30 PM**



**Arkansas Department of Labor and Licensing**
10421 W. Markham Street
Little Rock, Arkansas 72205

www.labor.arkansas.gov

**Our Vision:   L**eading-**A**rkansans-**B**eyond-**O**rdinary-**R**esults

This e-mail is provided for informational purposes only and is not to be relied on as legal advice or as the legal opinion of the agency in future or pending matters.

---

**From:** Samantha Martinez (ADL)
**Sent:** Thursday, May 14, 2020 11:21 AM
**To:** aneshadexter@gmail.com <aneshadexter@gmail.com>
**Subject:** Wage Claim 2020-0392

*[Handwritten: Note: green ink is CSM's]*

*[Handwritten: Submitted Pay to CSM (Pay period / date) (to Carson Brazel)]*

*[Handwritten: Blackened out. This is for second pay period not the entire month of Oct!]*

*[Handwritten: 4 hours from Oct 2019 paid in Nov 2019]*

University of Central Arkansas
201 Donaghey Ave
Conway, Arkansas  72035
501-450-5000

| | |
|---|---|
| Banner ID: | B01019134 |
| SSN/SIN/TIN: | ******4268 |
| Employee: | Anesha Renee Dexter |
| Address: | 1623 Bruce St |
| | Conway, Arkansas  72034-6424 |

Pay Date: ████████
Pay Period: ████████████

## Payment Summary

| Type | Current Period | YTD Amount |
|---|---|---|
| Gross Amount: | $148.00 | $1,406.00 |
| Total Personal Deductions: | $11.32 | $107.56 |
| Net Amount: | $136.68 | $1,298.44 |
| Total Employer Contributions: | $11.48 | $109.35 |

## Earnings

| Job | Earnings | Shift | Hours or Units | Rate | Amount | YTD Amount |
|---|---|---|---|---|---|---|
| Extra Help - Hourly | Back Pay for Extra Help | 1 | | | | $407.00 |
| | Extra-Help Hourly | 1 | 4.00 | $37.000000 | $148.00 | $999.00 |
| | | | | Total: | $148.00 | $1,406.00 |

## Benefits, Deductions and Taxes

| Benefits and Deductions | Employee | Employee YTD | Employer | Employer YTD | Applicable Gross | Applicable Gross YTD |
|---|---|---|---|---|---|---|
| Taxes | | | | | | |
| Arkansas State Income Tax | $0.00 | $0.00 | $0.00 | $0.00 | $148.00 | $1,406.00 |
| Arkansas Unemployment | $0.00 | $0.00 | $0.00 | $0.00 | $148.00 | $1,406.00 |
| Federal Income Tax | $0.00 | $0.00 | $0.00 | $0.00 | $148.00 | $1,406.00 |
| FICA Medical | $2.15 | $20.39 | $2.15 | $20.39 | $148.00 | $1,406.00 |
| FICA OLD AGE | $9.17 | $87.17 | $9.17 | $87.17 | $148.00 | $1,406.00 |
| Deductions after Federal Tax | | | | | | |
| Worker's Compensation | $0.00 | $0.00 | $0.16 | $1.79 | $148.00 | $1,406.00 |
| Total: | $11.32 | $107.56 | $11.48 | $109.35 | | |

## Check or Direct Deposit

| Number | Document Type | Bank Name | Account Type | Amount |
|---|---|---|---|---|
| 646141 | Direct Deposit | Arvest Bank Fayetteville | Checking | $135.66 |

## Filing Status

### Federal Income Tax

| Filing Status | Number of Allowances | NRA Indicator | Step 2C Indicator | Year Ind | Additional Withholdings | Dependent Amount | Other Income | Deductions |
|---|---|---|---|---|---|---|---|---|
| Single | 1 | No | No | | $0.00 | $0.00 | $0.00 | $0.00 |

### Arkansas State Income Tax

| FileStat | Exempt | Additional Withholding |
|---|---|---|
| S | 1 | $0.00 |

*[Handwritten: Proof of Payment via direct Deposit]*

| Fall 2019 Student Name Kara Curtis | Lesson Length | Weeks of lessons | Time | 08/26 Week 1 | 09/02 Week 2 | 09/09 Week 3 | 09/16 Week 4 | 09/23 Week 5 | Sep 30 Week 6 | Oct 7 Week 7 | Oct 14 Week 8 | ... | ... Nov Week 11 | 11/11 Week 12 | 11/18 Week 13 | 12 Make ups |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 hour | 13 weeks | Varies | 6:00 - 7:00 pm | 6:00-7:00 pm | 6:00-6:00 pm | 6:00-7:00 pm | 2:30pm-3:30pm | 4:00pm-6:00 | 4:00pm-5:00pm | 3:00pm-4:00pm | | 6:00pm-7:00pm | | 6:30-7:30pm | |
| | | | | 1 hr | 1 hr | 1 hr | 1 hr | 1 hr | 2 hr | 1 hr | 1 hr | | 1 hr | 1 hr | 1 hr | 1 hr |

*(handwritten)* 4 hours in October 2019



## Wage Claim 2020-0392

**Anesha Dexter** <aneshadexter@gmail.com>                                    Fri, May 22, 2020 at 2:52 PM
To: "Samantha Martinez (ADL)" <Samantha.Martinez@arkansas.gov>

Ms. Martinez,

Thank you for your email.  Sorry for the delay.
However, this is not true, and is and is not correct. There two hours that I am owed for October as I taught 6 hours total which is two hours more than the normal four hours ( one each week), as my student had extra lessons due to a special engagement.

I believe what is most important regarding October payment is there.
If you need further clarification/supporting documents or information, please let me know.

Thank you for you time and attention to this matte.

Best regards,


www.aneshadexter.com

This e-mail is provided for informational purposes only and is not to be relied on as legal advice
or as the legal opinion of the agency in future or pending matters.

---

**From:** Anesha Dexter <aneshadexter@gmail.com>
**Sent:** Friday, May 22, 2020 6:14 PM
**To:** Samantha Martinez (ADL) <Samantha.Martinez@arkansas.gov>
**Subject:** Re: Timesheet and lesson log discrepancies

Ms. Martinez,

I have a correction regarding the Oct 16 2019 pay period. Sorry about that but I just thought to read my email to you
again and noticed that I wasn't clear and that I forgot to make any mention about the two hours that are missing. Most
importantly, they are the reason that I am even filing this claim.

Although It is already been discussed and is in fact the issue, in my previous email to you, I didn't make clear that I
actually taught six hours in the second pay period. I forgot to mention that the other two hours were on Oct 30, and it
was a two hour lesson as it included a make-up lesson. This lesson was scheduled at the end of the pay period so we
had lessons on Oct 17(1 hour), Oct 21,22, and 24 (3 hours), and on Oct 30 (2 hours) which adds up to six hours for
the Oct 16, 2019 Pay Period.  I was only payed for four of the six hours as is shown in the pay stub. However, the Pay
Period and Pay Date have been blacked and replaced with a written explanation to make it look like the four hours are
for the entire month of October. This is ridiculous being that we have two pay periods, hence the blackened out
information.  The second pay period is the period that is relevant to the six hours of work that I reported.  As far as
processing the hours, I have to submit my time/hours worked to my employer, and they have to approve them before
they are submitted to HR for payment.
Therefore, my employer could have asked me about the additional hours at the time I submitted them, but as I
mentioned to you over the phone, no one ever asked me about them.

No one ever asked me about any extra hours submitted for the fall term until Jan 2020 which is all in the email that I
forwarded to you.

I didn't even notice that I had not been paid until all of this came about. Either way, the six hours that I taught were
submitted for approval, but apparently two of those hours were disregarded and deliberately so as it is clear that my
employer is now trying to cover up the fact that they are wrong about this entire debacle by falsifying documents past
and present for some unknown and obvious reasons, and ultimately are continuing to deny the facts, that one, they
owe me, and two, It is they that are at fault for all of this. Once again, this is not their first time I have been treated
unfairly regarding payment of work as I shared with you over the phone that I was not paid all of last summer until I
finally paid a visit to HR as I was continually receiving the run around from Ron McDaniel who is over the Fiscal and
Payroll. This was a horrible situation and experience as his negligence put me in the red and·I had to payout
additional charges and fees as a result. Oh yes, I won't forget to again mention the negative attitude and behavior
following that incident. Ultimately, I didn't get paid until after the beginning of the Fall Term in 2019; No apologies,
concerns, etc., but I can now understand why. The unfair treatment is and has been highly unprofessional, unethical,
and unnecessary to say the least.

As I have mentioned, this stuff really triggers my anxiety. It may seem small or petty but it really creates and cause me
A LOT of stress and anxiety, mentally and physically.  I am pretty sure this is all for now, but hopefully I have made
myself clear.

Again, please let me know if you need anything else, and I will do the same.

Best regards,

On Fri, May 22, 2020 at 3:27 PM Anesha Dexter <aneshadexter@gmail.com> wrote:
    This is the email thread regarding the issue at hand.

    Also, I noticed something, and I am curious as to why the Pay-Period and Pay-Date are blackened out and replaced

with a written in explanation by the employer. Actually, as I am writing this, it JUST dawned on me that the dates, although they are marked out and a bit hard to read, I can make out that the Pay Date is Nov 16, 2019, and that the Pay Period is Oct 16, 2019.

The dates that I taught the extra hours were in the latter part of October, therefore I taught a total of four hours for the last pay period. (I taught a one hour lesson in the first week of the given Pay Period, and I also taught three one hour lessons the following week of that period. Again, I can provide any further details if necessary.

In the previous period Oct 1-15, I only two hours, which is what I normally teach during a pay period.

So, ultimately, my employer is trying to hide the fact by covering up the pay period/date info as the hours during this time period is the time for which I am owed.

For your information , the times are still in my google calendar. I did not submit those to my employer as it was not necessary as I had already submitted the text messages between me and my student.

I no longer have access to my work account, but there is an additional time sheet (Google Sheets) where we had to keep additional tracking of the dates and times that we worked. However, I may have printed it off when all of this transpired. I will have a look and let you know.

Again, thank you for your time and attention to this matter.

Best regards,


———— Forwarded message ————
From: **Anesha Dexter** <aneshadexter@gmail.com>
Date: Thu, Jan 9, 2020 at 2:55 PM
Subject: Re: Timesheet and lesson log discrepancies
To: Ronald McDaniel <rmcdaniel3@uca.edu>
CC: Anesha Dexter <flutistaneshadexter@yahoo.com>, **Bridget Fortenberry** <bridgetf@uca.edu>, **Jaimee Jensen** <jaimeej@uca.edu>, **Stephen W. Plate** <splate@uca.edu>, ksmith56@uca.edu <ksmith56@uca.edu>


You're welcome.

On Thu, Jan 9, 2020 at 2:55 PM Ronald McDaniel <rmcdaniel3@uca.edu> wrote:
   Anesha,

   We're all good from here on out.  I appreciate you taking the time to get this information to me.


   Thanks so very much,

   Ron



Ronald Jensen-McDaniel | Fiscal & Outreach Coordinator
University of Central Arkansas | Community Music Institute
Snow Fine Arts 203 | 201 Donaghey Avenue | Conway, AR 72035
501-450-3672 | 501-513-7149 mobile | rmcdaniel3@uca.edu


AVID: UCA dedicates itself to Academic Vitality, Integrity, and Diversity

This e-mail is provided for informational purposes only and is not to be relied on as legal advice or as the legal opinion of the agency in future or pending matters.

---

**From:** Samantha Martinez (ADL) <Samantha.Martinez@arkansas.gov>
**Sent:** Wednesday, May 27, 2020 8:53 AM
**To:** Anesha Dexter <aneshadexter@gmail.com>
**Subject:** Re: Timesheet and lesson log discrepancies

Ms. Dexter,

I have reviewed the text messages that you sent in and I think I have a clearer understanding of your claim. According to the messages between you and your student I can see that she was running late on October 30, 2019. The main issue that I can see with the message is there is no confirmation that your student showed up that day. What time did the lesson start? When did it end? Can you provide your students contact information so that I may reach out to her and confirm the date and time?

I want to apologize, I know this process can be stressful. I want to ensure that you are compensated correctly. The employer claims they only had documentation for 10-21-19 for 2 hours and 10-28-19 for 2 hours. According to your text messages with your student I found evidence that shows that you worked 1 hour on 10-17-19, your student canceled 10-21-19 and rescheduled 2 hours on 10-22-19. I also see that you and your student scheduled a session on 10-29-19 for 2 hours.

*Respectfully,*

*Samantha L. Martinez*
*Arkansas Department of Labor & Licensing*
*Labor Standards Investigator*
**Direct : (501) 690-9561**
**Office : (501) 682-4500**
Email : Samantha.Martinez@Arkansas.gov
**Hours : Mon-Fri 8:00 AM – 4:30 PM**



**Arkansas Department of Labor and Licensing**
10421 W. Markham Street
Little Rock, Arkansas 72205

www.labor.arkansas.gov

**Our Vision:** Leading-Arkansans-Beyond-Ordinary-Results

 Gmail

---

## Timesheet and lesson log discrepancies

---

**Samantha Martinez (ADL)** <Samantha.Martinez@arkansas.gov>                    Thu, May 28, 2020 at 9:25 AM
To: Anesha Dexter <aneshadexter@gmail.com>

Ms. Dexter,

      I have submitted the text messages to the employer and I asked for them to be reviewed. The employer has sent back a discrepancy report. This is what the employer has explained to me; The student signed up for 13 hours and paid for the 13 hours through the fall semester. The records reflect that you worked and were paid for 21 hours throughout the fall semester. The employer acknowledges that you worked 5 hours in October and were only paid for 4.

      When the discrepancy was brought to the employers attention they reviewed all of the information that you provided and found that they over paid you in December for 2 hours. Based on the text messages that you provided to them they found Dec 19 was canceled by the student and Dec 30 the student was a no show. The employer did pay you for the 2 hours despite what the evidence shows.

      Is it possible to schedule a call with you for this afternoon at 1:45? If so, I will call you at that time and we will discuss this further.


*Respectfully,*

*Samantha L. Martinez*
*Arkansas Department of Labor & Licensing*
*Labor Standards Investigator*
**Direct : (501) 690-9561**
**Office : (501) 682-4500**
Email : Samantha.Martinez@Arkansas.gov
**Hours : Mon-Fri 8:00 AM – 4:30 PM**


 **Arkansas Department of Labor and Licensing**
10421 W. Markham Street
Little Rock, Arkansas 72205

www.labor.arkansas.gov


**Our Vision:   Leading-Arkansans-Beyond-Ordinary-Results**

 Gmail

---

## Timesheet and lesson log discrepancies

**Anesha Dexter** <aneshadexter@gmail.com>                                    Fri, May 29, 2020 at 6:12 AM
To: "Samantha Martinez (ADL)" <Samantha.Martinez@arkansas.gov>

Ms. Martinez.

      Thank you for following up with me. Sorry that I am just getting back to you but I've been a bit busy that last couple of days. Thank you for  I am glad to know that it provided you more clarity about the situation.  I am more than happy to provide my students contact information to you, but the texts that I submitted already included the text shows our communication the day before where we are confirming our meeting for the next day on Oct 30th.  Either way, if she had scheduled, and she did, and did not show up, I would be and am still owed. That is and has always been clear.  Nevertheless, she showed up, and I have attached one last document that proves that and that proves that this has been just as I have said - a debacle. It also confirms what I was told by HR, that they can not pay me until the hours were approved by my employer. Well, that never happened, nor did they follow up with me regarding that matter. Instead, I was just ignored and denied payment for the rest of the hours that I worked, hours that were initially reported during the second pay period in October, but unfortunately you are not able to read it in the details of the pay stub that my employer provided you as they have blackened it out. So, I have included a clean copy of my pay stub as well. I printed it from my account in January and the date of print is shown on the document in the top left corner.

In your reply you clarified what you understood regarding my texts, but for further clarity, the times given in the text on Oct 22 are for confirmation of the lesson time on Oct 24 and are for clarity of time zones as my student was away for the wedding. You can even see where she has written in the text (Oct 22) saying that she is ready whenever I am, as she was letting me know that she was set to begin the online lesson. At the end of our lesson we set a day and time for the following lesson, which in this case was on the coming  Thursday at 6:30pm my time and 4:30pm California time (pst). Therefore, my hours that week were three and include the cancellation on Oct 21, which was rescheduled for the following day on Oct 22, same time. FYI, in the text thread regarding Oct 22, where it begins with "I can",  is where we are in communication regarding the rescheduling of the lesson that she canceled that day, Oct 21. I value my time and and the time of others, therefore I always aim to be clear about such communications. I have already proven that I did not meet on those days as my texts prove it all. The point is that I have more proof that I did teach than any of their proof which has yet to be factual.

As you can see, my employer continues to boldly fabricate, and falsify documents and has made false claims and accusations against me as it is evident and has been since the last email from HR to CSM. It's all in the email. Nevertheless, I followed protocol, and frankly have had to go above and beyond to prove what never needed to be proved and ultimately was wrongfully terminated. Although I do not mind, I have already provided enough proof, but I am glad that you asked as I have yet more proof that will bring full clarity to the situation. It is clear that they are being dishonest. I have given enough proof. My word and proof is enough. As a matter of fact, I do mind giving you my students contact information as my student should no longer be subject to this nonsense. They lied on her in the beginning. They lied on me as well and are continuing to do so. As I have already shared, when they contacted me regarding the hours, they had already talked to my student before ever asking me anything, and when she told them the truth, they They lied about what my student said in order to create this debacle which has turned out to be a fiasco. In the texts, my student clarified what she told Ron as I quoted her what was said in the email.  This makes sense because I could not imagine why my student would lie about our meeting seeing as we were communicating about it in a text. Also, you can see where she is inquiring about rescheduling as a result of her not showing up. So, there is no need to speak to my student. They are the ones that can not get their lie straight and need to be held accountable. I believe everything happens for a reason. I am sorry that I am just getting back to you but I had busy day yesterday and today and am just now able to get back to this as it is exhausting and drains my energy, mentally, emotionally, and physically.

The fact that I have to provide further proof in addition to what I initially provided and that proved that there was not a problem on my part is so frustrating. Nevertheless, this is a result of my employer providing you falsified documentation,and as a result you are asking me for further proof because they are causing confusion by providing you with falsified information. What they have provided you is not what I submitted but is a fabricated documentation that does not exist and has nothing to do with me and here I am the one that has been accused. This is proven in the

Summary Report which shows the days and times that I entered, all except for the two hours that were removed, because I did enter them. How is it now that they want to acknowledge only one hour when there are two missing hours based on the facts and the proof I have provided? They are outright fabricating, and have done so over and over again. Instead of doing what is right, morally and ethically, I am being treat like a criminal, and being required to continue to provide more and more proof over what is already evident.

I have told you the truth and have also followed up with proof and more proof that proves and matches up with what I have always said from the beginning because it is the truth.

What I provided has proved accurate, so much that it is HR that pointed it out to me that I was owed two hours for that period. This matches what I have provided and is the conclusion that was drawn in January. Unfortunately, my employer at CSM is continuing to perpetuate their hostile behavior and attitude towards me to say the least. This was not a mistake on my part, and was definitely not a mistake on their part as they have worked hard to prove me wrong, even though there is concrete proof. They just did what they wanted to do instead of speaking with me about it.and took it upon themselves to dismiss what I reported. It was not a mistake as they have only been trying to cover the fact that they are not being truthful and now it is proven. It is not a mistake as they have yet to try to resolve the matter but have continuously gone above and beyond using fraudulent behavior, including the misuse of my pay stub to try and justify the time frame according to their story. First it was for the month of October, and when asked to clarify the time, they provided you with random dates and times that they created in order to fit the text messages. This is so obvious as I had already submitted this information in October and was paid for all of the hours except the ones(two hours) they decided that I did not teach. Also, regarding the documentation, whatever they claim to have is false because the formal documentation(my pay stub) is available and shows what I entered for the pay period and what they approved for payment. This is the real documentation that was approved by their office so I do not know what other documentation they have. Actually, they are probably talking about the Google Sheet that I mentioned. If this is the case, I also entered the same information on the Google Sheets, so this is another fabrication. Just so you know, when I went to check the google spreadsheet doc earlier today, it was gone, they deleted it as the document was previously there but I no longer have access to it. My being able to access the document has nothing to do with my no longer being employed there as I currently have another document from CSM that was also shared with me by Ron last September and it is still there. When a document it shared in Google Docs, etc. it remains available until it is removed. Well, it has been removed, and why? I will tell you why, they did not want me to use it for further proof. Either way, Google Docs, Sheets, etc, track the editing history and also shows who and when the last person opened and or edited the document. So, this is why they have deleted it. Unfortunately for them, the Google Sheets will not help them out because the days/hours that I logged are exactly the hours that are documented, reported, and are accounted for with the proof I have provided. Either way, their dates do not match. Period. Side note: Google Sheets was integrated in the fall of 2019 due to Ron being flagged regarding the way in which he documented the hours that he had to submit to HR on my behalf for me at the end of the summer as I was not able to login. He brought attention to himself when HR noticed that he had entered the hours as one work day instead of on the actual days and times that I taught. HR said that he can not do that. The reason they noticed it is because they were comparing the hours that Ron submitted with the documentation that I had to provide for the work that I had not been paid for during the summer. a

Okay, I have to get to bed as I have been up all night dealing with this. Nevertheless, I am more than happy to speak with you some time today, please. However, it would be great if you can suggest a time to expect your call as I may not answer due to spam calls. I am very tired at the moment, so I hope that this all makes sense grammatically, etc. If not, just let me know. Either way, it is the truth.

Thank you for your help, and I look forward to speaking with you. If possible, later this afternoon would be great. I am pretty sure that I will more than likely I will sleep until late morning or noon.

Talk soon,

---

**2 attachments**

Summary of Reported Time OCT 2019.pdf
130K

OCT 16-31.pdf
146K

 **Gmail**

---

## Timesheet and lesson log discrepancies

---

Samantha Martinez (ADL) <Samantha.Martinez@arkansas.gov>                    Mon, Jun 1, 2020 at 8:40 AM
To: Anesha Dexter <aneshadexter@gmail.com>

Ms. Dexter,

I am back in the office this morning I had an emergency that came up on Friday that took me away from the office. I read your response. I do need to clarify something, in a wage claim I am strictly looking for the work agreement. So far I have evidence that proves you were paid for a total of 21 hours. This does not appear to be in dispute by either parties. When it comes down to determining if there are lost wages I have to relay heavily on what evidence is presented. I understand that you are frustrated with the employer, I want you to understand that the employer has only provided the documentation that I have requested from them.

I want to back this claim up to the initial agreement - According to the employer you were initially supposed to be paid for 16 hours? Is this correct?

Was there a protocol that you had to follow if you exceeded the 16 hours?

The purpose of the students information was to verify how many classes she took, it would be a witness statement to go into the file.

The only thing the employer is disputing is that you wrote down that you worked 21 hours when you were only supposed to work 16 per the agreement. The employer is challenging the fact that the student attended and paid for the sessions. If I could speak with the student I would have a second party that could confirm that they attended and paid for the classes. The employer isn't necessarily looking at October, they are looking at the total time that you were contracted for and the total time you were paid for.

In this investigation there are 3 determinations that can be found.

1- In favor of the claimant (I can find in your favor based on the evidence presented and the employer will have the right to appeal the determination and request a formal hearing.)

2- In favor of the employer (I can find in favor of the employer because the evidence/ work agreement is not clear or there is evidence the claimant has been paid in full. This option allows the claimant to request a formal hearing.)

3- The claim can be dismissed (The claimant chooses to discontinue, there is evidence the claim exceeds the limitations being under $50 or over $2000)

Please contact me when you are available so that we may speak. I will have sometime this afternoon at 2 pm available for a call and will be in the office until 4.

*Respectfully,*

*Samantha L. Martinez*
*Arkansas Department of Labor & Licensing*
*Labor Standards Investigator*
**Direct : (501) 690-9561**
**Office : (501) 682-4500**
**Email** : Samantha.Martinez@Arkansas.gov
**Hours : Mon-Fri 8:00 AM – 4:30 PM**



**Arkansas Department of Labor and Licensing**
10421 W. Markham Street
Little Rock, Arkansas 72205

www.labor.arkansas.gov

**Our Vision:   Leading-Arkansans-Beyond-Ordinary-Results**

This e-mail is provided for informational purposes only and is not to be relied on as legal advice
or as the legal opinion of the agency in future or pending matters.

---

**From: Anesha Dexter** <anesheadexter@gmail.com>
**Sent:** Friday, May 29, 2020 6:12 AM
**To:** Samantha Martinez (ADL) <Samantha.Martinez@arkansas.gov>
**Subject:** Re: Timesheet and lesson log discrepancies

Ms. Martinez,

Thank you for following up with me. Sorry that I am just getting back to you but I've been a bit busy that last couple of days. Thank you for  I am glad to know that it provided you more clarity about the situation.  I am more than happy to provide my students contact information to you, but the texts that I submitted already included the text shows our communication the day before where we are confirming our meeting for the next day on Oct 30th.   Either way, if she had scheduled, and she did, and did not show up, I would be and am still owed. That is and has always been clear.  Nevertheless, she showed up, and I have attached one last document that proves that and that proves that this has been just as I have said - a debacle. It also confirms what I was told by HR, that they can not pay me until the hours were approved by my employer. Well, that never happened, nor did they follow up with me regarding that matter. Instead, I was just ignored and denied payment for the rest of the hours that I worked, hours that were initially reported during the second pay period in October, but unfortunately you are not able to read it in the details of the pay stub that my employer provided you as they have blackened it out. So, I have included a clean copy of my pay stub as well. I printed it from my account in January and the date of print is shown on the document in the top left corner.

In your reply you clarified what you understood regarding my texts, but for further clarity, the times given in the text on Oct 22 are for confirmation of the lesson time on Oct 24 and are for clarity of time zones as my student was away for

 Gmail

---

**Timesheet and lesson log discrepancies**

---

**Samantha Martinez (ADL) <Samantha.Martinez@arkansas.gov>**                    Tue, Jun 2, 2020 at 9:58 AM
To: Anesha Dexter <aneshadexter@gmail.com>

Ms. Dexter,

      I do want to apologize in reading my previous emails I stated 16 hours it should have stated, 13 hours. I am sending this email to clarify the error in the previous email to you. Again I should have stated, 13 hours in the place of the 16 hours.

*Respectfully,*

*Samantha L. Martinez*
*Arkansas Department of Labor & Licensing*
*Labor Standards Investigator*
**Direct : (501) 690-9561**
**Office : (501) 682-4500**
Email : Samantha.Martinez@Arkansas.gov
**Hours : Mon-Fri 8:00 AM – 4:30 PM**



**Arkansas Department of Labor and Licensing**
10421 W. Markham Street
Little Rock, Arkansas 72205

**www.labor.arkansas.gov**

**Our Vision:   L**eading-**A**rkansans-**B**eyond-**O**rdinary-**R**esults

This e-mail is provided for informational purposes only and is not to be relied on as legal advice or as the legal opinion of the agency in future or pending matters.

---

**From:** Samantha Martinez (ADL) <Samantha.Martinez@arkansas.gov>
**Sent:** Monday, June 1, 2020 8:40 AM
**To:** Anesha Dexter <aneshadexter@gmail.com>
**Subject:** Re: Timesheet and lesson log discrepancies

Ms. Dexter,

 Gmail

---

## Timesheet and lesson log discrepancies

---

**Samantha Martinez (ADL)** <Samantha.Martinez@arkansas.gov>                    Wed, Jun 3, 2020 at 2:15 PM
To: Anesha Dexter <aneshadexter@gmail.com>

Ms. Dexter,

   I tried to call you earlier, I want to apologize but I have made a mistake when I was reviewing your claim I did not consider the fact that the University was a state agency and there for out of my jurisdiction. When I counseled with my supervisor earlier he informed me that the university and claims from their employees must be handled either by an attorney, in small claims or by the claims commission. The claims commission number is 501-682-1619. I can't apologize enough as I know that you have been stressed out about this situation and please understand that I did have the best intentions to try to get you what you worked for. I do hope that you can get this matter resolved with their office. Your wage claim will be dismissed with our office as it is out of our jurisdiction.

*Respectfully,*

Samantha L. Martinez
*Arkansas Department of Labor & Licensing*
*Labor Standards Investigator*
**Direct : (501) 690-9561**
**Office : (501) 682-4500**
Email : Samantha.Martinez@Arkansas.gov
**Hours : Mon-Fri 8:00 AM – 4:30 PM**

 **Arkansas Department of Labor and Licensing**
10421 W. Markham Street
Little Rock, Arkansas 72205

www.labor.arkansas.gov

**Our Vision:   L**eading-**A**rkansans-**B**eyond-**O**rdinary-**R**esults

This e-mail is provided for informational purposes only and is not to be relied on as legal advice or as the legal opinion of the agency in future or pending matters.